# Exhibit 4

United States Environmental Protection Agency

Office of Land and Emergency Management

April 27, 2018
www.epa.gov/epcra

# How do the reporting requirements in EPCRA Section 304 apply to farms engaged in "routine agricultural operations"?

EPA interprets the EPCRA statute to exclude farms that only use substances in "routine agricultural operations" from reporting under EPCRA section 304.

As written, the reporting requirements in EPCRA section 304 apply only to facilities "at which a hazardous chemical is produced, used or stored." Congress, however, created an exception relevant to farms. As indicated above, EPCRA reporting turns on whether a facility produces, uses or stores a hazardous chemical. The term "hazardous chemical," as defined in EPCRA sections 329(5) and 311(e), does not include "any substance to the extent it is used in routine agricultural operations."

Therefore, if a farm only uses substances in "routine agricultural operations," the farm would not be a facility that produces, uses or stores "hazardous chemicals," and would therefore not be within the universe of facilities which are subject to EPCRA section 304 release reporting. Because such farms fall outside of section 304, they are not required to report any releases of EPCRA extremely hazardous substances or CERCLA hazardous substances under EPCRA, including any releases from animals or animal waste.

Based on the language of the statute described above, EPA believes Congress did not intend to impose EPCRA reporting requirements on farms engaged solely in routine agricultural operations. The statute does not define "routine agricultural operations," but EPA has previously identified examples of routine agricultural operations. Those examples were not intended to be exhaustive. EPA clarifies here that it interprets the term "routine agricultural operations" to encompass regular and routine operations at farms, animal feeding operations, nurseries, other horticultural operations and aquaculture.

Additionally, as stated in previous policy interpretations, the following are examples of substances used in routine agricultural operations:
- Paint used for maintaining farm equipment;
- Fuel used at the farm to operate machinery or to heat buildings in a farm for housing animals; and
- Chemicals used for growing and breeding fish and aquatic plants in an aquacultural operation.

These examples are not intended to be exhaustive. EPA interprets the statute to include other substances used in routine agricultural operations, including animal waste stored on a farm and animal waste that is used as fertilizer. EPA also notes that use of a substance in routine agricultural operations includes the storage of that substance necessitated by such use. To illustrate based on one of the examples cited above, an inherent part of using fuel to operate machinery is storage of that fuel.

EPA clarifies here that, just as an aquacultural operation involving the feeding and breeding of fish would be considered a routine agricultural operation, the feeding and breeding of animals, as well as the expected handling and storage of the animals' waste, would also be considered a routine agricultural operation. EPA thus interprets the phrase "used in routine agricultural operations" to include, for example, the handling and storage of waste for potential use as fertilizer. In creating the routine agricultural operation exception, Congress demonstrated its intent to treat farms differently than other types of facilities. EPA does not believe Congress intended the generation, handling or storage of animal waste to subject farms to reporting if they do not otherwise produce, use or store hazardous chemicals.

Under EPA's interpretation, a farm where substances are used only in routine agricultural operations is not within the scope of EPCRA section 304. However, farms that use hazardous substances on their facility for purposes other than routine agricultural operations (e.g., an automobile repair shop) are subject to EPCRA reporting.