UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RURAL EMPOWERMENT ASSOCIATION FOR COMMUNITY HELP, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY, et al.,<br><br>  Defendants. | Case No. 18-cv-2260 (TJK) |

**EPA'S MOTION TO DISMISS CLAIMS 1-3 OF THE AMENDED COMPLAINT UNDER RULE 12(B)(1) AND RULE 12(B)(6)**

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the U.S. Environmental Protection Agency (EPA), and Andrew Wheeler, EPA Administrator (together, EPA), move to dismiss Claims 1-3 of Plaintiffs' amended complaint. These claims are moot because they address two EPA guidance documents which are no longer in effect. In addition, the Claims 1-3 must be dismissed because Plaintiffs' allegations fail to state a claim under the Administrative Procedure Act (APA).

**INTRODUCTION**

Plaintiffs' amended complaint attacks EPA's construction of the Emergency Planning and Community Right to Know Act (EPCRA) in two separate respects. *See* ECF No. 29, Am. Compl. First, Claims 1-3 assert that EPA violated the APA when it amended its animal waste emissions webpage to include versions of two different EPCRA guidance documents. *Id*. ¶¶ 118-50. Second, Claims 4-6 challenge EPA's new rule, entitled "Amendment to Emergency Release

Notification Regulations on Reporting Exemption for Animal Emissions from Animal Waste at Farms" (FARM Act Rule), 84 Fed. Reg. 27,533 (June 13, 2019). Am. Compl., ¶¶ 151-71.

Plaintiffs' first set of claims—those involving EPA's guidance documents—must be dismissed. These claims are moot because EPA has withdrawn the guidance documents on which the claims are premised. EPA has further provided a sworn declaration attached to this motion stating that it does not intend to reissue either guidance document in the future. *See* Decl. of R. Cheatham, Exh. A. Thus, no controversy remains, and these claims should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).

In addition, Claims 1-3 should also be dismissed under Rule 12(b)(6) because the allegations fail to state a claim. Plaintiffs cannot, as they seek to do, challenge EPA's administration of the animal waste webpage. Rather, the APA allows only for claims that challenge a concrete and identifiable agency action. While EPA's issuance of guidance documents may in some instances constitute such an action, EPA's management of a webpage certainly does not, and so these claims must be dismissed on this basis as well.

## STATUTORY BACKGROUND

The Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) and the Emergency Planning and Community Right to Know Act (EPCRA) together address the requirements for notifying governmental authorities about certain releases of hazardous substances.

Section 103 of CERCLA, 42 U.S.C. § 9603, requires a facility to notify the National Response Center when there is a release of a "hazardous substance" (as defined by 42 U.S.C. § 9601(14)(C)), above the defined reportable quantity. In March of 2018, section 103 of CERCLA was amended when the President signed into law the Consolidated Appropriations

Act. Title XI of the Omnibus Bill is entitled the "Fair Agricultural Reporting Method Act" or the "FARM Act." *See* Fair Agricultural Reporting Method Act, Pub. L. No. 115-141, §§ 1101-1103, 132 Stat. 348 (2018). The FARM Act amended CERCLA section 103, and expressly exempts air emissions from animal waste (including decomposing animal waste) at farms from reporting. *Id.* The FARM Act also defines the terms "animal waste" and "farm." *Id.*

Section 304 of EPCRA, 42 U.S.C. § 11004, requires certain facilities to notify state and local authorities when there is a release of an "extremely hazardous substance" (as defined by § 11002), or of a CERCLA hazardous substance above the reportable quantity. Whether a release must be reported under EPCRA depends, in part, on whether the release must be reported under CERCLA section 103, 42 U.S.C. § 9603. Among other things, EPCRA section 304(a) requires reporting if there is a release of an "extremely hazardous substance" from a facility where the substance is produced, used or stored, where the release is not subject to the notification requirements under CERCLA section 103(a), provided the release meets three additional requirements:

- The release is not a "federally permitted release" under CERCLA section 101(10);

- The release exceeds the reportable quantity for the substance as determined by EPA; and

- The release "occurs in a manner" that would require notification under CERCLA section 103(a).

42 U.S.C. § 11004(a)(2).

## PROCEDURAL HISTORY

In October 2017, EPA issued the guidance document entitled "Does EPA interpret EPCRA Section 304 to require farms to report releases from animal waste?" (Routine Agricultural Operations guidance) by posting a link to the document on EPA's website. ECF No.

29-4, Am. Compl., Ex. 4. In March of 2018 the FARM Act became law. Pub. L. 115-141, §§ 1101-1103, 132 Stat. 348. The following month, in response to the FARM Act's amendments to CERCLA, EPA issued the guidance document entitled "How does the Fair Agricultural Reporting Method (FARM) Act impact reporting of air emissions from animal waste under CERCLA Section 103 and EPCRA Section 304?" (FARM Act guidance), again by posting a link to the document on EPA's animal waste website. ECF No. 29-6, Am. Compl., Ex. 6. EPA has since removed both of these links from its website. *See* Decl., ¶¶ 4-5.

In September of 2018, Plaintiffs filed their initial complaint seeking review of EPA's statutory interpretations of the FARM Act, which is set forth in the two EPCRA guidance documents. *See* ECF No. 1, Compl. The Complaint referred to these guidance documents as together constituting an "EPCRA Exemption," but also recognized that the guidance documents operate independently. *E.g.*, *id.* at ¶¶ 86-88, 124d. (requesting vacatur of "all versions of the EPCRA Exemption, the EPCRA Q&A, and the FARM Act Q&A"). Plaintiffs later described their claims in briefing over the contents of the administrative record as a "challenge[] the webpage as a whole." ECF No. 27, Reply in Supp. of Mot. to Compel at 3. Plaintiffs explained that this challenge "includes, but is not limited to" the two guidance documents that EPA issued interpreting the FARM Act. *Id.* at 3.

On June 4, 2019, after providing notice of the proposed rule and an opportunity to comment, Administrator Wheeler signed the FARM Act Rule, amending EPCRA release notification regulations. The FARM Act Rule explicitly exempts air emissions from animal waste at farms from reporting under EPCRA section 304. 84 Fed. Reg. at 27,535-36. EPA explained in the preamble to the FARM Act Rule that the rule "generally tracks the guidance document EPA had previously issued after enactment of the FARM Act." *Id.* at 27,535. As a

4

result, "EPA formally withdraws the guidance document entitled, "How does the Fair Agricultural Reporting Method (FARM) Act impact reporting of air emissions from animal waste under CERCLA Section 103 and EPCRA Section 304?" *Id*. Since the FARM Act Rule was promulgated, EPA has likewise withdrawn the Routine Agricultural Operations guidance, and does not intend to renew or reissue either guidance document. *See* Decl., ¶¶ 4-5.

Shortly after the FARM Act Rule was published, Plaintiffs filed an amended complaint. The Amended Complaint reasserts claims challenging EPA's now withdrawn guidance documents. Am. Compl., ¶¶ 118-50. The Amended Complaint also raises new claims challenging the FARM Act Rule under the APA. *Id*. ¶¶ 151-71.

## LEGAL STANDARD

As to the Rule 12(b)(1) motion to dismiss, "[t]he burden of establishing mootness rests on the party that raises the issue." *Motor & Equip. Mfrs. Ass'n v. Nichols*, 142 F.3d 449, 459 (D.C. Cir. 1998). But, the opposing party bears the burden of showing that a dispute remains "live" notwithstanding the cessation of the challenged conduct. *Honeywell Int'l, Inc. v. Nuclear Regulatory Comm'n*, 628 F.3d 568, 576 (D.C. Cir. 2010). In addition, the Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

As to the Rule 12(b)(6) motion to dismiss, to survive dismissal "a complaint must include factual allegations that establish a plausible claim to relief." *United States ex rel. Kasowitz Benson Torres LLP v. BASF Corp.*, --- F.3d ----, 2019 WL 2896005, at *2 (D.C. Cir. July 5, 2019).

**ARGUMENT**

I. **EPA'S WITHDRAWAL OF THE GUIDANCE DOCUMENTS MOOTS CLAIMS 1-3 WHICH ADDRESS THOSE DOCUMENTS.**

This Court should dismiss Claims 1-3 of the Amended Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) because these claims are moot. For Claims 1-3, Plaintiffs allege that EPA violated the APA when it published on the animal waste website versions of the Routine Agricultural Operations guidance, and the FARM Act guidance. *E.g.*, Am. Compl., ¶¶ 9-10; ¶¶ 118-50. Plaintiffs further allege that these guidance documents, along with EPA's management of its animal webpage more generally, constitute a single, unlawful "EPCRA Exemption." *Id.* ¶¶ 9-10 (stating that Routine Agricultural Operations guidance constituted "original EPCRA Exemption" which was "updated" when the second guidance was issued). Plaintiffs' challenges to the so-called "ECPRA Exemption" are moot because the two guidance documents on which these claims are premised have been withdrawn. Further, there is no reasonable expectation that the guidance documents will be reissued.

"[A] case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Larsen v. U.S. Navy*, 525 F.3d 1, 3–4 (D.C. Cir. 2008) (citing *Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). Courts must evaluate mootness "through all stages" of the litigation to ensure that a live controversy remains. *21st Century Telesis Joint Venture v. FCC*, 318 F.3d 192, 198 (D.C. Cir. 2003) (citations omitted). As a result, "[e]ven where litigation poses a live controversy when filed, the [mootness] doctrine requires a federal court to refrain from deciding it if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" *Id.* (quoting *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990)). Voluntary cessation of the challenged conduct will moot a case where "there is no reasonable

expectation . . . that the alleged violation will recur" and "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Am. Bar Ass'n v. FTC*, 636 F.3d 641, 648 (D.C. Cir. 2011) (internal quotation marks and citation omitted).

For example, in *Fund for Animals, Inc. v. U.S. Bureau of Land Management*, 460 F.3d 13 (D.C. Cir. 2006), the court held that a challenge to a BLM memorandum was moot because the memorandum had expired and so was no longer in effect. *Id.* at 18. The D.C. Circuit reached the same conclusion in *Worth v. Jackson*, 451 F.3d 854 (D.C. Cir. 2006). There, the court held that the agency's sworn statement that it "will not renew" the challenged policy was sufficient to moot the case. *Id.* at 861. *Worth* reasoned that "the Constitution nowhere licenses us to rule on the legality of an agency policy that no longer exists" and that will not be renewed, and so the claim was dismissed. *Id. See also In re Bluewater Network*, 234 F.3d 1305, 1314 (D.C. Cir. 2000) ("Petitioners do not here challenge the 1997 temporary regulations, either for what they did or did not do; those regulations have expired. Whatever issues could have been raised regarding their legality are moot.").

Similarly here, the guidance documents that form the basis of Claims 1-3 are no longer in effect, and will not be reissued in the future. As to the FARM Act guidance, EPA has promulgated a new rule that codifies the Agency's interpretation of section 304 of the FARM Act, and "formally withdraw[n]" the challenged FARM Act guidance. 84 Fed. Reg. at 27,535. EPA further provided that it "does not intend to renew or reissue the FARM Act guidance." Decl., ¶ 4. And as to the Routine Agricultural Operations guidance, EPA has removed this document from its website. The Agency has attested that it is withdrawing this guidance, and does not intend to reissue the same guidance in the future. *Id.* at ¶ 5.

Because both guidance documents have been withdrawn, and there is no reasonable probability that either will be reissued, Claims 1-3 are moot, and must be dismissed. *See Worth*, 451 F.3d at 861.

## II. CLAIMS 1-3 ALSO FAIL BECAUSE THE PLAINTIFFS HAVE NOT PLED A CHALLENGE TO A COGNIZABLE AGENCY ACTION.

Even if this Court concludes that EPA's withdrawal of the guidance documents does not render Claims 1-3 moot, these claims should nevertheless be dismissed because Plaintiffs' assertions that EPA's animal waste website is unlawful do not plead cognizable claims under the APA.

The APA provides a cause of action for a court to "hold unlawful and set aside agency action." 5 U.S.C. § 706; *see also* § 551(13) (defining the term "agency action" to include "the whole or a part of an agency rule"). The Supreme Court has repeatedly held that a Plaintiff may challenge only a "concrete" and "identifiable" agency action. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 899 (1990); *see also Indep. Petroleum Ass'n of Am. v. Babbitt*, 235 F.3d 588, 595 (D.C. Cir. 2001). The Court explained in *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55 (2004), that a challenge to an action under the APA may proceed only if the action is "discrete." *Id*. at 64. This limitation precludes "broad programmatic attack[s]" that "seek wholesale improvement of [a] program by court decree." *Id*.

For example, in *Lujan*, the plaintiffs attempted to challenge the government's "land withdrawal review program," a term they invented to refer to myriad activities by the Bureau of Land Management that plaintiffs alleged were collectively inconsistent with the Federal Land Policy and Management Act. 497 U.S. at 890. The Supreme Court held that the plaintiffs' programmatic attack was not justiciable because it did not focus on any identifiable agency

8

action. *Id*. at 899. This was so even though the plaintiffs had pointed to some individual land management decisions in alleging unlawful action by the agency. *Id*. at 891-92.

The D.C. Circuit has recognized and applied *Lujan*'s rejection of programmatic challenges. In *Indep. Petroleum Ass'n of Am.*, 235 F.3d at 592, the plaintiffs attempted to challenge DOI's "efforts" to collect royalties, but failed to challenge any specific DOI order requiring royalty payments. The court held that because the plaintiffs' complaint did not refer to a particular "action" by DOI, it failed to challenge "final agency action" under the APA. *Id*. at 595. Similarly, in *Fund for Animals*, 460 F.3d at 20, the D.C. Circuit held that a plaintiff's challenge to the agency's budget strategy for managing wild horses and burros was not aimed at any discrete action because the budget strategy represented the "sum of 'many individual actions,' including some 'yet to be taken'" and did not impose any binding requirements on agency conduct. *Id*. (citation omitted).

Applying these precedents, the agency's creation and alteration of a webpage is not a "concrete and "identifiable" action as is required for judicial review under the APA. Again, Plaintiffs contend that EPA's repeated amendment of its animal waste website to reflect different guidance documents constitutes a single agency action—the so-called, EPCRA Exemption— which was adopted without the procedure required by the APA. Am. Compl. ¶¶ 9-10; ¶ 172 (seeking vacatur of "all versions" of the "EPCRA Exemption"). These allegations run afoul of *Independent Petroleum Association*, which made clear that an agency's "efforts" apart from a specific action are not reviewable. 235 F.3d at 592. Rather, like *Fund for Animals*, the animal waste webpage serves as the "sum of many individual actions," which are not collectively reviewable as a single claim. 460 F.3d at 20. Indeed, Plaintiffs recognize in their Amended Complaint that EPA changed the website frequently, stating that they are aware of "at least eight

times [EPA edited the webpage] since first posting the exemption on its website in October 2017." Am. Compl., ¶ 20. The animal waste webpage, like many agency webpages, merely serves as a repository of information—it alone is not a "concrete" and "identifiable" action that may be challenged under the APA. Because Claims 1-3 do not pled a cognizable challenge to an "agency action" under the APA, these claims must be dismissed. *See Indep. Petroleum Ass'n*, 235 F.3d at 595-96; *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1485 (D.C. Cir. 1992).

## CONCLUSION

For the reasons stated above, Claims 1-3 of the Plaintiffs' Amended Complaint should be dismissed.

Dated: July 23, 2019

Respectfully submitted,

/s/ Meghan E. Greenfield
Meghan E. Greenfield
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
Telephone: (202) 514-2795
Facsimile: (202) 514-8865
Meghan.Greenfield@usdoj.gov

*Counsel for Defendants*