# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Rural Empowerment Association for Community Help, et al., | |
| Plaintiffs, | **CASE NO. 18-cv-02260-TJK** |
| v. | |
| United States Environmental Protection Agency, et al., | **Declaration of Judy Jolin** |
| Defendants, and | |
| National Cattlemen's Beef Association, et al., | |
| Intervenor-Defendants. | |

## DECLARATION OF JUDY JOLIN

I, Judy Jolin, declare that I am over 18 years of age and that if called as a witness in this action I would competently testify of my own personal knowledge as follows:

1. I am a member of the Humane Society of the United States ("HSUS"). I am not sure exactly when I joined HSUS, but I think it was probably about ten years ago. I joined HSUS because I appreciate that the organization is broad in what it represents—that it represents all animals. I was particularly impressed when I learned that the organization does work to protect farm animals, animals that many other nonprofits don't represent.

2. I live in Picket, Wisconsin in a home that my husband and I purchased in the 1970s. In addition to our home, we own a 95-acre property in Rosendale Township. This property is about two miles from our home.

3. I grew up on a dairy farm in Wisconsin. My dad was a farmer, and he had about 100 cows on his farm.

4. I have long had a deep respect for the natural world and have always loved animals. As a result of these interests, I am a member of various environmental and animal welfare nonprofits.

5. In recent years, several large concentrated animal feeding operations ("CAFOs") have been built in my community and in neighboring communities in Wisconsin. I don't think local authorities in Wisconsin have ever denied a CAFO permit. These farms are nothing like the traditional farms I grew up with. I don't even like to call them farms. In my view, they are industrial operations, not farms.

6. Given the industrial nature of CAFOs, I am very concerned about the impact these operations have on the environment, public health, and animal welfare. CAFOs have so many animals. My dad's farm had 100 cows. At the time, we thought that was big, but the CAFOs being

built in Wisconsin now can have thousands of animals. In addition, many of these CAFOs store the massive amounts of animal waste they produce in lagoons, where the waste ferments and produces terrible smells and air emissions. The smell from these lagoons is totally different from manure produced on traditional (and much smaller) farms. I sometimes smell the noxious odors emitted from these lagoons when I am driving in various parts of Wisconsin.

7. In 2008, a CAFO began to operate about a quarter mile from the property we own in Rosendale Township ("Rosendale property"). The CAFO has at least 10,000 dairy cows. It stores the massive amounts of feces these animals produce in manure lagoons.

8. My husband and I, along with other concerned community members, tried to fight the building of the CAFO but were ultimately unsuccessful.

9. This CAFO has drastically impacted our everyday lives. The traffic near our home has increased significantly with semi-trucks coming to and from the CAFO, hauling feed and manure. The smell coming from the manure trucks is terrible, and I try to avoid leaving my home when I see one coming.

10. In addition, the construction of the CAFO has had a significant impact on our use of the Rosendale property.

11. My husband and I purchased the Rosendale property with several other couples around 1990. At the time, we used it for recreating—we enjoyed walking on the property, swimming in the pond there, and observing the wildlife living on the land. In addition, we regularly had family picnics on the property, enjoying the chance to spend time outdoors with our family and friends.

12. Over time, my husband and I purchased the other couples' shares of the Rosendale property and became the sole owners around 2000. We purchased the property in its entirety with the intention of building our retirement home there.

13. When the CAFO began operating in 2008, my husband and I realized that we would not be able to build our retirement home on the Rosendale property. When the wind blows from the south, the stench of the waste produced by the cows on the CAFO is unbearable. It overwhelms your entire being. Your eyes smart, your throat hurts, and you begin to feel sick to your stomach if you are exposed for too long. Once the CAFO was built, my husband and I knew there was no way that we could live on the Rosendale property.

14. We thought about selling the property but didn't know how much money we would be able to get for it once the CAFO was built. And, we truly love the land. So, we decided to keep the Rosendale property and continue to use it for recreating as much as we are able.

15. However, when the wind blows from the south, we cannot use the Rosendale property because of the smell. The effect is even worse when it's humid. So, when we want to use the Rosendale property, we drive over from our house in Picket. If we get out of our truck and can smell the CAFO's animal waste, we return home. If the smell is absent, we use our property.

16. When the CAFO was first built, we were unable to use the Rosendale property for recreating about a third of the time. The CAFO covered its manure lagoons a few years ago, after being pressured by the local community, and we are able to use our property a little more now. But even with the covered lagoons, we are still frequently unable to use the Rosendale property for recreating because of the smells emitting from the CAFO.

17. We can no longer have family picnics at the Rosendale property. We can't predict which way the wind will be blowing, so we can't plan big events outside for fear that the smell will be unbearable on the day of the event.

18. When we can use the Rosendale property, my husband tends to the garden he planted there, and we walk on the land twice a day for exercise. We also swim in the pond on the property

and enjoy observing the wildlife on the land. We have developed a prairie for wildlife, and we see deer, coyote, waterfowl, sand hill cranes, opossum, raccoons, song birds, frogs, snakes, monarch butterflies, dragonflies, and other species of insects. Our daughter and granddaughters often come with us to the property.

19. I am aware that there is a federal law—the Emergency Planning and Community-Right-to-Know Act ("EPCRA")—that is intended to provide the public and local government authorities with access to information about industrial facilities' releases of extremely hazardous substances above certain threshold amounts, including the types and amounts of substances released. I am also aware that ammonia and hydrogen sulfide, which are produced by CAFOs as animal waste decomposes, must be reported if they are released above certain threshold amounts. I understand that the Environmental Protection Agency ("EPA") recently exempted CAFOs and other animal feeding operations from reporting these types of emissions under EPCRA.

20. I am concerned that the EPA has exempted CAFOs from reporting their air emissions under EPCRA. I am harmed by EPA's action because it deprives me of information that I am entitled to under EPCRA.

21. I would like to have access to information about the types and amounts of hazardous pollutants coming from the CAFO near the Rosendale property, including the amounts of hydrogen sulfide and ammonia released.

22. I have often wondered about what I—and my husband and other family members—are inhaling when we use the Rosendale property and when we travel to the property and have to leave because of the smells being blown onto our property from the CAFO. I am concerned about the impact inhaling the air pollutants coming from the CAFO could have on my health, my husband's health, and my other family members' health.

23. If I had access to information about the types and amounts of air pollutants coming from the CAFO, I could use it to make informed decisions about how to protect my health and the health of my family members. I would share this information with my doctor, so that we could use this information to make decisions about my health.

24. In addition, depending on what we learned about the types and amounts of pollutants emitted from the CAFO, my husband and I may change how we use our property. We are both nearing 80 years of age and are fortunate to be in relatively good health. We would not want to jeopardize this if we learned that dangerous levels of air pollutants are being released from the CAFO near the Rosendale property. This is especially true for my husband, who has allergies and heart problems.

25. In addition, I would share information about the emissions from the CAFO with members of my community, including family members and friends, so that they could make informed decisions about their health and well-being.

26. I would also share this information with local representatives to help them understand the impact CAFOs have on the surrounding communities and to attempt to influence their decisions about approving future CAFOs.

27. I also think that it is possible that requiring CAFOs to publicly reveal information about their emissions of hazardous air pollutants could serve as a first step in forcing them to change their production practices and to consider the impact they have on local communities. CAFOs have been trying to hide this information for years, and making them disclose it could have an impact on how they operate. My family, friends, and I could benefit from measures that would lead to reductions in the volume of pollutants released from the CAFO near the Rosendale property and other CAFOs in Wisconsin.

28. If the Court were to rule for the plaintiffs in this case, I believe that the harms I have outlined above would be significantly reduced or eliminated because CAFOS, like the one near the Rosendale property, would be subject to EPCRA reporting and would have to provide local officials and the general public with information about the extremely hazardous substances they are releasing.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on this __14__ day of December 2021, in _Pickett, Wi. 54964_

*Judy Jolin*

Judy Jolin