# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Rural Empowerment Association for Community Help, et al., <br><br>                    Plaintiffs, <br><br>           v. <br><br> United States Environmental Protection Agency, et al., <br><br>                    Defendants, <br>         and <br><br> National Cattlemen's Beef Association, et al., <br><br>                    Intervenor-Defendants. | **CASE NO. 18-cv-02260-TJK** <br><br> **Declaration of Stephen Brittle** |

## DECLARATION OF STEPHEN BRITTLE

I, Stephen Brittle, do hereby declare that if called as a witness in this action I would competently testify of my own personal knowledge as follows:

1. I am the president and co-founder of Don't Waste Arizona (DWAZ).

2. DWAZ is a tax-exempt, nonprofit membership organization with one office in Phoenix, Arizona. DWAZ has about 100 members across the state of Arizona. I know that many of our members live in communities where industrial livestock operations are present. For many of them, the experience of living near these facilities—especially due to the emissions of odors, gases, and particulate matter—is a large part of what motivated them to join DWAZ.

3. I co-founded DWAZ in 1990, but DWAZ formally incorporated in 1992 to be eligible to participate in a TAG grant for the Motorola Superfund site in Phoenix, Arizona. In so doing, I helped create its organizational purpose and goals. I am a member of DWAZ's Board of Directors, and have been since the organization's inception. Since the organization's founding, DWAZ's activities have focused on the environmental, human health, and economic impacts of environmental pollution, especially toxic chemical exposure from reportable hazardous chemical releases. DWAZ has always been an advocate for environmental justice. Starting in 2015, DWAZ has focused on the development of industrial agriculture. Principal among these activities are analyses and actions to mitigate the impact of industrial agriculture and its emissions of ammonia and hydrogen sulfide on human health and the environment.

4. In creating DWAZ, I sought to establish a nonprofit organization that addressed many of my personal interests in protecting the environment from harmful chemicals and pollution. This includes concentrated animal feeding operations (CAFOs). Chief among my concerns about CAFOs are the negative environmental impacts of industrial agriculture technologies: water and air contamination from factory farming, and reportable quantity releases under the Emergency Planning and Community Right-To-Know Act (EPCRA) and the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) of ammonia and hydrogen sulfide from

CAFOs. In addition, I created DWAZ to protect the interests of its members in ensuring that the environment is safe for human health and the environment.

5. Among the ideals that DWAZ was built upon is the education of its members and the public about the various environmental laws, including the information that is available to the public through permitting processes and the regulatory agencies. This education of its members and the public also includes education about federal citizen suit enforcement of the various environmental laws. DWAZ has conducted over 90 successful federal citizen suit enforcement actions, ranging from the Clean Water Act and the Resource, Conservation, and Recovery Act (RCRA) to EPCRA.

6. To that end, DWAZ provides oversight of governmental activities surrounding environmental regulations and the emergency response and planning system set up by EPCRA. This includes the state emergency response commission, the local emergency planning committees, and fire departments, especially regarding two severe chemical fire disasters in an ethnic minority community in south Phoenix.

7. As president of DWAZ, I served for ten years as a member of the Maricopa County LEPC, where I also chaired the committee that reviewed and updated that LEPCs Emergency Plan as required by EPCRA. DWAZ also has participated in numerous hazardous materials and EPCRA conferences over a period of years so that it would be proficient in its expertise in these matters.

8. DWAZ has also engaged in the following activities: worked cooperatively with the EPA to develop internet resources regarding EPCRA and other emergency response laws (www.chemicalspill.org); required a defendant in an EPCRA Section 313 case (Toxics Releases Inventory) to fund a Supplemental Environmental Project to increase citizen awareness of the Toxics Releases Inventory; prepared a curriculum for LEPC members in Arizona to better understand the members' responsibilities under EPCRA pursuant to a contract with the Arizona Emergency Response Commission; and got media attention for issues related to the different types of community right to know information.

DWAZ has developed educational and informational materials that address the environmental impacts of various forms of pollution in a variety of

industries, focusing largely on EPCRA, and disseminates the materials to DWAZ members; policymakers; local, state and federal government personnel; international governmental officials; nonprofit organizations; and interested members of the public. These educational and informational materials include, but are not limited to, websites, press releases, newsletters, action alerts, and fact sheets.

9. Through these materials, DWAZ provides its members with a means of supporting the public's right to know, and to encourage full public participation in defining the issues presented by industrial agriculture. DWAZ sends out action alerts to its members, who submit comments and letters to government agencies and officials, respectively, on issues related to industrial agriculture.

10. DWAZ also engages in litigation to enforce federal environmental laws. DWAZ has conducted over 90 successful federal citizen suit enforcement actions, ranging from Clean Water Act and RCRA to EPCRA. The EPCRA cases involved enforcing Section 313 (Toxics Release Inventory), Section 312/302, which requires reporting quantities of chemicals stored on-site, and Section 304, for failing to provide the written follow-up report when there has been a reportable quantity release.

11. DWAZ has also worked on multiple campaigns that aim to mitigate the effects of pollution and chemical exposures that harm the environment and the public, as well as environmental justice education.

12. DWAZ has a vested interest in opposing CAFOs given the significant negative environmental and human health impacts that result from their use of industrial agriculture methods. One of the greatest threats to the environment that CAFOs present stems from their significant concentration and production of animal waste, estimated at 500 million tons annually. Large concentrations of animal waste can also result in emissions of harmful contaminants into the air, including ammonia, hydrogen sulfide, endotoxins, particulate matter, and volatile organic compounds. Residents and farmworkers living near CAFOs are greatly affected by animal waste and their emissions. Mounting research suggests that as CAFOs are established in certain areas, corresponding health problems, including respiratory, intestinal, and neurological issues, increase in local communities. These symptoms are consistent with those found in CAFO workers. The human health effects on our children may be even greater.

13. DWAZ has been concerned about the environmental and human health impacts of industrial agriculture for more than three years, when members of the public asked for assistance in response to environmental issues caused by two CAFO facilities in Arizona.

14. Due to DWAZ's concerns about the human health impacts of emissions of harmful contaminants into the air from CAFOs, DWAZ has contacted EPA Region 9, the various environmental regulatory agencies in Arizona, the governor of Arizona, the Maricopa County Board of Supervisors, fire departments, the Arizona Emergency Response Commission, the Maricopa County LEPC and the Maricopa County Department of Emergency Management, the Maricopa County Board of Health, and others about these concerns.

15. It is my opinion as a ten-year LEPC member that the information contained in the written follow up reports from CAFOs is useful to LEPCs. This is because the LEPC has a duty to include in its comprehensive emergency plan, which has to be updated annually, a method to determine that a reportable quantity release -- a release of ammonia and/or hydrogen sulfide -- has occurred, as well as a statutory obligation for the plan to have a way to notify affected communities when a release has occurred.

16. The releases of ammonia and hydrogen sulfide from CAFOs may cause ambient air concentrations of these hazardous chemicals to reach levels that require shelter in place or evacuations. The LEPC would use the daily release amounts reported by CAFOs to calculate the off-site consequences, generally using the ALOHA software developed by EPA that determines the footprint of the release into affected areas downwind. Then there should be planning for an emergency response.

17. I was first alerted that a nearby CAFO was emitting dangerous levels of ammonia when I emerged from a meeting at a school three miles from a CAFO. Given my Ammonia Safety Training I had as an LEPC member, I instantly realized there was an immediate health threat that warranted shelter in place or an evacuation because I was suffering from burning eyes and choking on the fumes. This led me to contact emergency response agencies to determine what releases were being reported by the CAFO, only to learn that it had not been reporting at all.

18. The challenge to the EPCRA reporting exemption for CAFOs is of fundamental importance to DWAZ, as information about pollution from CAFOs is critical to our advocacy, to our oversight of governmental activities related to CAFOs, and to the interests of our members. Without this information, we cannot effectively conduct our advocacy activities or adequately inform our members about how to protect their health.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___12-9-21___

_/s/ Stephen Brittle_
Stephen Brittle